JOHNSON v. BARNHILL CONTRACTING CO.

[121 N.C. App. 55 (1995)]

═══════════

WILLIAM EUGENE JOHNSON, IV, ALLEGEDLY WHOLLY DEPENDENT ADULT CHILD; JONATHAN DANIEL PHILLIPS JOHNSON, BY HIS GUARDIAN AD LITEM; WILLIAM EUGENE JOHNSON, JR., CHILD; JEREMY B. DOBBINS, ALLEGEDLY SUBSTANTIALLY DEPENDENT STEPCHILD; AND DEBORAH S. JOHNSON, ALLEGED WIDOW OF WILLIAM EUGENE JOHNSON, III, DECEASED EMPLOYEE, PLAINTIFFS v. BARNHILL CONTRACTING COMPANY, EMPLOYER; AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY, CARRIER, DEFENDANTS

No. COA94-1223

(Filed 5 December 1995)

1. **Workers' Compensation § 261 (NCI4th)— computation of weekly wage—consideration of wages at last two places of employment**

In computing a deceased employee's average weekly wage, the Industrial Commission erred in considering only the employee's wage with his last employer for the four months preceding his death and not his higher wages with his employer during the fifty-two weeks preceding his death, since the first employer experienced financial difficulties and ultimately bankruptcy; plaintiff was a supervisor for this employer; the subsequent employer bought some of the first employer's assets and hired the deceased employee along with other employees to complete the DOT job in progress at the time of bankruptcy; and these circumstances demonstrated a continuity between the two employments which justified consideration of the employee's weekly wages at the first employment. N.C.G.S. § 97-2(5).

**Am Jur 2d, Workers' Compensation §§ 418-430.**

JOHNSON v. BARNHILL CONTRACTING CO.

[121 N.C. App. 55 (1995)]

2. **Workers' Compensation § 277 (NCI4th)— employee and wife separated at time of death—wife not entitled to benefits**

The Industrial Commission did not err in denying the claim of an employee's wife for death benefits where the employee and his wife had been separated for several months when he died; the evidence was sufficient to support the Commission's finding that the employee did not abandon or desert his wife; the evidence showed that defendant lived in another town during the week because he worked there, that he lived at home with his wife on weekends, and that his wife was the one who chose to move out of the marital residence; and the Commission found there was no credible evidence of a drinking problem or abusive conduct that would constitute justifiable cause for the wife to live apart from her husband.

**Am Jur 2d, Workers' Compensation §§ 205, 206.**

Appeal by plaintiffs from Opinion and Award of the North Carolina Industrial Commission filed 20 May 1994 and Amended Opinion and Award filed 31 May 1994. Heard in the Court of Appeals 23 August 1995.

*Van H. Johnson for plaintiff-appellant Deborah S. Johnson and Pritchett, Cooke and Burch, by Stephanie B. Irvine, for plaintiffs-appellants William E. Johnson, IV. and W.E. Johnson, Jr., guardian ad litem for Jonathan Daniel Phillips Johnson.*

*Maupin, Taylor, Ellis & Adams, P.A., by Winston L. Page, Jr., for defendants-appellees.*

LEWIS, Judge.

This is a dispute over entitlement to workers' compensation death benefits and the computation of the deceased employee's average weekly wage.

William Eugene Johnson, III ("employee") died on 11 February 1993 as a result of a workplace accident that occurred while he was working for defendant Barnhill Contracting Company ("Barnhill"). Prior to working for Barnhill, he worked for Outer Banks Contractors ("OBC") as a construction supervisor from 2 May 1988 until his discharge on 2 October 1992. While at OBC he earned a weekly wage of

JOHNSON v. BARNHILL CONTRACTING CO.

[121 N.C. App. 55 (1995)]

$865 except for a period of time during which he earned a lower weekly wage. His job was terminated at OBC due to that company's financial difficulties and subsequent bankruptcy. While at OBC, he was the supervisor for a Department of Transportation ("DOT") project in Williamston, North Carolina, and for other DOT projects held by OBC. Barnhill bought some of OBC's assets and hired employee Johnson along with other OBC employees to complete the DOT project in Williamston. Employee accepted a position as foreman with Barnhill, but for less pay than he received at OBC. He worked in this position on the Williamston DOT project and, subsequently, on another DOT job for Barnhill in Manteo, for an average weekly wage of $584.36 from 12 October 1992 until his death on 11 February 1993. At the time of his death, employee and his wife, Deborah Johnson, were living separately. She had moved out of their home in Kill Devil Hills on 4 November 1991. Before she moved out, he was living in Williamston during the work week, and coming home on weekends.

Employee's wife, stepson, and two sons filed workers' compensation claims. Defendants and employee's sons requested that the claim be assigned for hearing for a determination of entitlement to the death benefits. The matter was heard by Deputy Commissioner Lawrence B. Shuping, Jr. on 20 July 1993. In opinion first filed 3 September 1993 and amended 10 September 1993, Deputy Commissioner Shuping awarded compensation to employee's sons, Jonathan Daniel Phillips Johnson, and William Eugene Johnson, IV ("employee's sons"), and denied compensation to his wife, Deborah Johnson, and step-son, Jeremy D. Dobbins. The compensation awarded was based solely on the average weekly wage earned by employee at Barnhill. Employee's wife and sons appealed to the full Commission which substantially adopted the opinion and award of Deputy Commissioner Shuping in its Opinion and Award filed 20 May 1994 and Amended Opinion and Award filed 31 May 1994. Employee's sons and wife appeal.

[1] Employee's sons contend that the Commission erred (1) by failing to consider evidence of employee's earnings from his prior employment at OBC during the year preceding his death and (2) by refusing to find that the circumstances of his prior employment constituted an exceptional reason to consider his weekly wages during this prior employment in addition to his weekly wages while at Barnhill. We agree.

N.C.G.S. section 97-2(5) sets forth alternative methods for determining an employee's average weekly wage. The Commission applied the second of these which provides:

> . . . Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained.

N.C.G.S. § 97-2(5) (1994 Cum. Supp.). Since employee worked less than 52 weeks for Barnhill, use of the above method would ordinarily be appropriate. However, section 97-2(5) sets forth an alternative method which may be used for "exceptional reasons," to wit:

> But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

*Id.*

Employee's sons request that the weekly wages earned by employee at OBC during the year prior to his death be considered in determining his average weekly wage as an alternative method "for exceptional reasons." They assert that the following unusual circumstances prior to his death are "exceptional reasons:" the bankruptcy of OBC, the assumption by Barnhill of the Williamston DOT project at which employee Johnson was construction supervisor for OBC, the assumption of other OBC DOT projects by Barnhill, and Barnhill's purchase of certain OBC assets and retention of other OBC employees. They contend that these circumstances demonstrate a continuity between his employment with OBC and Barnhill that justifies consideration of his weekly wages at OBC.

This continuity of employment is similar to that in *Honeycutt v. Carolina Asbestos Co.*, 235 N.C. 471, 70 S.E.2d 426 (1952). The employee in *Honeycutt* worked at the same plant, but successively for two different employers, in different positions, and for different wages, during the fifty-two weeks prior to becoming disabled. *Id.* at 477, 70 S.E.2d at 430. The employee was paid less wages by the second employer. Our Supreme Court held that the Commission properly considered the higher wages the employee earned with his previous

**JOHNSON v. BARNHILL CONTRACTING CO.**

[121 N.C. App. 55 (1995)]

employer at the same plant because it would have been unfair to do otherwise.

It is similarly unfair to employee's sons not to consider his wages at OBC. The Commission found and concluded that "fair and just results can be obtained" by calculating employee's average weekly wage using only his earnings during the four months he worked for Barnhill. The evidence does not support this finding and conclusion. The purpose of the average weekly wage computation is to " 'measure . . . the injured employee's earning capacity.' " *Holloway v. T. A. Mebane, Inc.*, 111 N.C. App. 194, 198, 431 S.E.2d 882, 884 (1993) (quoting *Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 197, 347 S.E.2d 814, 817 (1986)). Further, as Professor Larson has emphasized, the purpose of having an alternative method is to prevent unfairness and to make sure that the computation reflects what the employee would have earned absent the injury. *See Holloway*, 111 N.C. App. at 198, 431 S.E.2d at 884 (quoting Larson, *Workmen's Compensation* § 60.31(c) (1993)).

Here, as a result of the bankruptcy of OBC, employee's wages at Barnhill were depressed. He was faced with having to accept less pay with Barnhill in order to stay in the area and continue working on the Williamston project and other DOT projects assumed by Barnhill from OBC. The Commission found, based on competent evidence, that he was qualified to perform significantly higher paying positions like the one he held with OBC. Including the higher wages employee earned at OBC in addition to his wages at Barnhill is fair to both employer and employee.

Accordingly, we hold that the Commission erred by failing to consider evidence of employee's wages at OBC during the fifty-two (52) weeks preceding his death. We reverse the Commission's finding and conclusion that fair and just results to both employer and employee can be obtained by using only employee's earnings at Barnhill during the fifty-two weeks preceding his death. On remand, the Commission should calculate employee's average weekly wages in a manner which takes account of his earnings at OBC during the fifty-two weeks preceding his death as well as his earnings at Barnhill. Except for the inclusion of his OBC earnings, this method should mirror the method of computation set forth in the first sentence of N.C.G.S. section 97-2(5) as closely as possible.

[2] Employee's wife appeals the Commission's denial of her claim for death benefits. Under N.C.G.S. section 97-2(14), a widow is defined as:

only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart for justifiable cause or by reason of his desertion at such time.

N.C.G.S. § 97-2(14) (Cum. Supp. 1994). If a "widow" under this statute, an employee's wife is conclusively presumed to be wholly dependent for support on the deceased employee, N.C.G.S. section 97-39 (1991), and thus entitled to receive compensation under N.C.G.S. section 97-38 (1991). Mrs. Johnson does not assert that she qualifies as a "widow" by "living with" or being "dependent for support" on the deceased employee at the time of his death. Rather, she argues that she was "living apart for justifiable cause or by reason of his desertion."

She first assigns error to the Commission's finding that employee did not abandon or desert her. The Commission's findings of fact are conclusive on appeal if supported by competent evidence; its legal conclusions and decision are reviewable for legal error and for a determination of whether they are justified by the findings. *Roberts v. ABR Assocs., Inc.* 101 N.C. App. 135, 138, 398 S.E.2d 917, 918 (1990).

Here, there is competent evidence to support the Commission's finding that employee did not abandon or desert his wife. To the extent that this "finding" is also a legal conclusion, it is justified by the findings of fact. The findings and competent evidence show that employee lived in Williamston during the week because he worked there, that he lived at home with his wife on weekends, and that his wife was the one who chose to move out of the marital residence.

Mrs. Johnson contends that the evidence shows she was "constructively abandoned" by employee, and urges us to apply "constructive abandonment" theory in the workers' compensation context. However, we will not consider constructive abandonment because the Commission found the wife's evidence on this issue not credible. She assigns error to this credibility determination. However, credibility is a matter for the Commission, not for this Court. *Russell v. Lowes Product Distribution,* 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Accordingly we affirm the Commission's finding on the credibility of her evidence. We also affirm its determination that employee Johnson did not abandon or desert his wife.

Mrs. Johnson further contends that the Commission applied the wrong legal standard in determining whether she was living apart from her husband for justifiable cause or because of abandonment.

She asserts that the Commission failed to apply the "totality of circumstances" analysis set forth in *Rogers v. University Motor Inn*, 103 N.C. App. 456, 405 S.E.2d 770, *disc. review denied*, 330 N.C. 120, 409 S.E.2d 600 (1991). In its Opinion and Award, the Commission distinguished *Rogers*, concluding that there was no credible evidence of a drinking problem or abusive conduct that would constitute justifiable cause for her to live apart from her husband. As stated above, the Commission dismissed the evidence presented by her on this issue as not credible. By so evaluating her evidence, the Commission has demonstrated that it considered the totality of the circumstances presented by the evidence, found her evidence lacking, and so reached its final determination. We find no error in the Commission's application of *Rogers*.

For the reasons stated, we affirm the Commission's denial of compensation to employee's wife, reverse its determination of his average weekly wage, and remand for calculation of average weekly wage in a manner consistent with this opinion.

Affirmed in Part, Reversed in Part, and Remanded.

Judges EAGLES and JOHN concur.