JAMES CARNELL WALKER, JR., Plaintiff-Appellee v. PENN NATIONAL SECURITY INSURANCE COMPANY, Defendant-Appellant

No. COA04-119

(Filed 15 February 2005)

**1. Insurance— multiple coverage—credits**

The trial court erred by failing to credit defendant—UIM carrier with the amount paid by the liability carrier in an automobile accident case involving liability insurance, workers' compensation insurance, and UIM insurance. A UIM carrier is entitled to a credit for payments made by the liability carrier; the failure to give defendant this credit gave plaintiff a recovery in excess of his actual damages.

**2. Workers' Compensation— rehabilitation costs—lack of evidence**

A lack of evidence regarding the rehabilitation services in question meant that the Court of Appeals was unable to perform a meaningful review of the exclusion of rehabilitation costs from the total amount of workers' compensation benefits.

3. **Workers' Compensation— rehabilitation costs—case-by-case determination**

The trial court did not err by excluding the cost of rehabilitation services when it computed workers' compensation benefits. Rehabilitation services are not a benefit as a matter of law; they must be subject to a fact-specific determination of whether a benefit was conferred.

4. **Insurance— multiple coverages—calculation of amount payable**

The Court of Appeals calculated the amount payable to plaintiff by defendant in an automobile accident case involving liability insurance, UIM insurance, and workers' compensation as follows: first, the amount paid to plaintiff by the liability carrier was subtracted from the UIM policy limit to find the UIM coverage limit; second, the amount plaintiff is entitled to recover from the UIM carrier was determined by subtracting the amount of workers' compensation benefits (not including the amount of the workers' compensation lien) and the amount plaintiff received from the liability carrier from plaintiff's total loss. The resulting figure represents the total amount of plaintiff's uncompensated loss and is the amount payable by the UIM carrier, plus interest.

Appeal by defendant from judgment dated 1 December 2003 by Judge William C. Griffin, Jr. in Superior Court, Beaufort County. Heard in the Court of Appeals 13 October 2004.

*Gaskins & Gaskins, P.A., by Herman E. Gaskins, Jr., for plaintiff-appellee.*

*McDaniel & Anderson, L.L.P., by William E. Anderson and John M. Kirby, for defendant-appellant.*

McGEE, Judge.

James Carnell Walker, Jr. (plaintiff) was injured in a motor vehicle collision on 1 August 2000. The accident was caused by the negligence of Troy Walker. At the time of the accident, plaintiff was working in the scope and course of his employment and operating a vehicle owned and insured by his employer, SIA Group-Seashore (SIA).

Troy Walker had liability insurance coverage with Shelby National Insurance Company (the liability carrier). The liability

insurance coverage limit was $30,000 per person and $60,000 per accident. The vehicle in which plaintiff was injured was also covered by an underinsured motorist (UIM) policy with Penn National Security Insurance Company (defendant). The UIM policy coverage limit was $1,000,000.

Plaintiff recovered the full $30,000 allowable from the liability carrier. The workers' compensation carrier for plaintiff's employer also paid a total of $81,948.37, as follows: $24,201.54 for plaintiff's medical expenses, $51,547.88 to plaintiff as compensation, and $6,198.95 to Hoover Rehabilitation. Pursuant to a clincher agreement, the workers' compensation carrier asserted a lien in the amount of $35,000 on any recovery plaintiff received from third parties.

Plaintiff and defendant submitted the issue of the value of plaintiff's personal injury claim to arbitration on 2 October 2002. The arbitrator found that the value of plaintiff's personal injury claim was $129,524. The parties thereafter agreed that the award should be modified to $126,874. The arbitrator did not resolve coverage issues or amounts to be credited.

Following the arbitration, plaintiff and defendant were unable to agree on the amount payable by defendant under the UIM policy. Specifically, the parties were unable to resolve how the 1999 amendment to the UIM statute, N.C. Gen. Stat. § 20-279.21(e) (2003), would affect the relationship between the award amount and the workers' compensation lien, thereby determining the amount payable by defendant. Defendant contended that the statute required that the arbitration award be offset by plaintiff's recovery from the workers' compensation carrier.

Plaintiff filed a complaint for a declaratory judgment on 2 April 2003, asking the trial court to declare the rights and liabilities of the parties and to declare that defendant pay plaintiff $96,874: the difference between the arbitration award and the $30,000 recovered from the liability carrier. Defendant's answer asked that the trial court require defendant to pay plaintiff an amount not greater than $50,874. Defendant calculated this amount by subtracting the sum of $30,000 recovered from the liability carrier and $46,000[1] workers' compensation benefits from the $126,874 total value of plaintiff's injury.

---

1. The figure $46,000 was reached by subtracting $35,000 (the amount of the worker's compensation carrier's lien) from $81,000 (the total paid out by the worker's compensation carrier). Defendant now admits, and the trial court found, that the total paid out by the worker's compensation carrier was $81,948.37: $24,201.54

While the declaratory judgment action was pending in the trial court, this Court, in *Austin v. Midgett (Austin I)*, 159 N.C. App. 416, 583 S.E.2d 405 (2003), resolved the confusion surrounding the 1999 amendment to the UIM statute. We held that the 1999 amendment "requires UIM carriers to insure the amount of the employer's workers' compensation lien on UIM proceeds received by the employee in addition to the damages uncompensated by workers' compensation benefits." *Id.* at 421, 583 S.E.2d at 409. As a result, a UIM carrier is entitled to a credit for the amount of workers' compensation benefits that are not subject to a workers' compensation lien. *Id.* at 421, 583 S.E.2d at 409. However, our Court did not consider the amount paid by the liability carrier and did not credit the UIM carrier with this amount.

In accordance with our holding in *Austin I*, the trial court credited defendant with the amount paid by the workers' compensation carrier, less the amount of the workers' compensation lien. However, the trial court reduced the amount of workers' compensation benefits by $6,198.95, the amount paid to Hoover Rehabilitation. In addition, under the guidance from *Austin I*, the trial court did not credit defendant with the $30,000 plaintiff received from the liability carrier. The resulting judgment ordered defendant to pay plaintiff $86,124.58, plus interest.

Following the trial court's declaratory judgment, this Court granted a petition for rehearing in *Austin I*. We subsequently clarified the *Austin I* holding in *Austin v. Midgett (Austin II)*, 166 N.C. App. 740, 603 S.E.2d 855 (2004). In *Austin II*, we held that *Austin I* resulted in an incorrect computation of the amount the UIM carrier owed to the plaintiff. *Austin II*, 166 N.C. App. at 741, 603 S.E.2d at 856. Our Court determined that, in order to avoid a windfall to the plaintiff, the UIM carrier was entitled to a credit for payments made by the liability carrier. *Id.* at 742, 603 S.E.2d at 856-57.

Our Court also outlined a two-step process for determining the amount due to a plaintiff from an UIM carrier. *Id.* at 741-42, 603 S.E.2d at 856. First, the limit of the UIM coverage is determined by subtracting the amount paid by the liability carrier from the UIM policy limit. *Id.* at 741, 603 S.E.2d at 856; *see also* N.C. Gen. Stat. § 20-279.21(b)(4) (2003). Second, the amount a plaintiff is entitled to recover from the UIM carrier must be determined. *Austin II*, 166 N.C. App. at 742, 603 S.E.2d at 856. This figure is calculated by subtracting from the total

---

in medical expenses; $51,547.88 to plaintiff in compensation; and $6,198.95 to Hoover Rehabilitation.

value of the plaintiff's loss, the amount of workers' compensation benefits (not including the amount of the workers' compensation lien) and the amount received from the liability carrier. *Id.* at 743, 603 S.E.2d at 857.

**[1]** Defendant first assigns error to the trial court's failure to credit defendant with the amount plaintiff received from the liability carrier. Defendant argues that by failing to credit defendant with this amount, plaintiff has received a windfall and a net recovery in excess of his actual damages. We agree. Under *Austin II*, a UIM carrier is entitled to a credit for payments made by the liability carrier. *Austin II,* 166 N.C. App. at 742, 603 S.E.2d at 856. Therefore, we hold that the trial court erred in failing to credit defendant with the $30,000 paid by the liability carrier.

**[2]** Defendant next assigns error to the trial court's calculation of the amount of benefits plaintiff received from the workers' compensation carrier. Defendant argues that the trial court erred by excluding the costs for Hoover Rehabilitation's services from the total amount of workers' compensation benefits plaintiff received.

The trial court's order contains the following finding of fact:

> 7. The sum paid to Hoover Rehabilitation was for a nurse to accompany plaintiff to his doctor visits and plaintiff received no benefit from this service. The sum paid to Hoover Rehabilitation was not compensation to plaintiff.

Our standard of review of a declaratory judgment is the same as in other cases. N.C. Gen. Stat. § 1-258 (2003); *Integon Indem. Corp. v. Universal Underwriters Ins. Co.*, 131 N.C. App. 267, 270, 507 S.E.2d 66, 68 (1998). Therefore, in an action for a declaratory judgment where the trial court decides questions of fact, our standard of review is whether the trial court's findings of fact are supported by competent evidence. *Insurance Co. v. Allison*, 51 N.C. App. 654, 657, 277 S.E.2d 473, 475, *disc. review denied*, 303 N.C. 315, 281 S.E.2d 652 (1981). If supported by competent evidence, the trial court's findings of fact are conclusive on appeal. *Finch v. Wachovia Bank & Tr. Co.*, 156 N.C. App. 343, 346-47, 577 S.E.2d 306, 308-09 (2003) (citing *Miesch v. Ocean Dunes Homeowners Assn.*, 120 N.C. App. 559, 562, 464 S.E.2d 64, 67 (1995), *disc. review denied*, 342 N.C. 657, 467 S.E.2d 717 (1996)).

Defendant argues that there was no evidence on which the trial court could base its finding that plaintiff received no benefit from

Hoover Rehabilitation. However, defendant has failed to present any evidence in the record tending to show that plaintiff received *any* benefit from Hoover. " 'The burden is on an appealing party to show, by presenting a full and complete record, that the record is lacking in evidence to support the [trial court's] findings of fact.' " *Davis v. Durham Mental Health/Development*, 165 N.C. App. 100, 112, 598 S.E.2d 237, 245 (2004) (alteration in original) (quoting *Dolbow v. Holland Industrial*, 64 N.C. App. 695, 696, 308 S.E.2d 335, 336 (1983), *disc. review denied*, 310 N.C. 308, 312 S.E.2d 651 (1984)). Our Rules of Appellate Procedure state: "The record on appeal in civil actions . . . shall contain . . . so much of the evidence . . . as is necessary for an understanding of all errors assigned[.]" N.C.R. App. 9(a)(1)(e). Furthermore, "[w]here the evidence is not in the record, it will be assumed that there was sufficient evidence to support the findings. In other words, when the evidence is not in the record the matter is not reviewable." 1 Strong's North Carolina Index 4th *Appeal and Error* § 489 (1990) (footnotes omitted) (citing *Leasing, Inc. v. Dan-Cleve Corp.*, 31 N.C. App. 634, 638, 230 S.E.2d 559, 562 (1976), *disc. review denied*, 292 N.C. 265, 233 S.E.2d 393 (1977) ("The rule is well established that when the evidence is not included in the record, it will be assumed that there was sufficient evidence to support the findings by the trial court.")); *see also Forrest v. Pitt County Bd. of Education*, 100 N.C. App. 119, 123, 394 S.E.2d 659, 662 (1990), *aff'd*, 328 N.C. 327, 401 S.E.2d 366 (1991) (holding that, without transcripts, depositions, or other necessary documents "it is presumed that the findings of fact are supported by competent evidence, and [the findings of fact] are therefore conclusive on appeal"). Since the record on appeal is devoid of evidence regarding the services provided by Hoover Rehabilitation, we are unable to determine what evidence was before the trial court and are unable to perform a meaningful review of this assignment of error.

[3] In the alternative, defendant argues that, as a matter of law, rehabilitation costs are a part of the workers' compensation benefits received by an injured worker. In support of its argument, defendant cites *Roberts v. ABR Associates, Inc.*, 101 N.C. App. 135, 398 S.E.2d 917 (1990), *superseded by statute on other grounds as stated in Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 472 S.E.2d 382, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996). We disagree with defendant's interpretation of *Roberts*. In *Roberts*, the workers' compensation carrier claimed that it was entitled to a lien in the amount that it paid for rehabilitation services. *Id.* at 137, 398 S.E.2d at 918. We held that before the Industrial Commission (the

Commission) can determine that a workers' compensation carrier is entitled to a lien, "the Commission must first find as fact . . . that the services were rehabilitative in nature . . . and reasonably 'required to effect a cure or give relief' to the plaintiff." *Id.* at 140-41, 398 S.E.2d at 920 (citing N.C. Gen. Stat. § 97-25 (1985)). Contrary to defendant's contention, *Roberts* states that rehabilitation services are not a benefit to a plaintiff as a matter of law, but rather must be subject to a fact-specific determination as to whether the services conferred a benefit to a plaintiff. We hold that the trial court did not err in excluding the cost of Hoover Rehabilitation's services when it computed the amount of workers' compensation benefits received by plaintiff.

**[4]** Having determined the foregoing, we proceed to the two-step inquiry outlined in *Austin II* to calculate the amount payable to plaintiff by defendant. *See Austin II*, 166 N.C. App. at 743, 603 S.E.2d at 856. We first subtract the amount paid to plaintiff by the liability carrier ($30,000) from the UIM policy limit ($1,000,000) and find that the UIM coverage limit is $970,000. We next determine the amount plaintiff is entitled to recover from the UIM carrier. Plaintiff's total loss was valued at $126,874. From this amount we subtract the amount of workers' compensation benefits, not including the amount of the workers' compensation lien, ($40,749.42[2]) and the amount plaintiff received from the liability carrier ($30,000). The resulting figure representing the total amount of plaintiff's uncompensated loss is $56,789.68. Thus, we hold that the amount payable by the UIM carrier to plaintiff is $56,789.68, plus interest.

Since we have held that, under *Austin II*, defendant is entitled to a credit for the amount plaintiff received from the liability carrier, we need not consider defendant's remaining assignments of error regarding this issue.

We remand this matter for entry of judgment in the above calculated amount.

Reversed and remanded.

Judges McCULLOUGH and ELMORE concur.

---

2. This figure was reached by subtracting the amount paid to Hoover Rehabilitation ($6,198.95) and the amount of the worker's compensation lien ($35,000) from the total amount paid by the worker's compensation carrier ($81,948.37).