* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner, with minor modifications.
 * * * * * * * * * * * ISSUES TO BE DETERMINED
The following are the issues in contention as submitted by the parties to the Deputy Commissioner:
1. Is Plaintiff-Employee entitled to receive medical treatment for psychological conditions caused or contributed to by his work related injury of June 19, 2006?
2. Is Plaintiff-Employee entitled to ongoing indemnity benefits? *Page 2 
3. To what, if any, additional benefits is Plaintiff entitled?
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Plaintiff sustained a compensable work-related injury to his back during the course of his employment with Defendant-Employer. The date of the injury which is the subject of this claim is June 19, 2006.
2. On such date, the parties hereto were subject to and bound by the provisions of the North Carolina Worker's Compensation Act.
3. On such date, the Employer-Employee relationship existed between Plaintiff-Employee and Defendant-Employer.
4. On such date, Defendant-Employer employed three (3) or more employees.
5. As of such date, the carrier of worker's compensation insurance in North Carolina for Defendant-Employer was INA Insurance Company.
6. Plaintiff-Employee's average weekly wage is $1,365.39, which is sufficient to generate the maximum compensation rate of $730.00 for 2006.
7. A package of Industrial Commission Forms is admitted into evidence as Stipulated Exhibit #2.
8. Plaintiff's medical records regarding this claim are admitted into evidence as Stipulated Exhibit #3.
9. Records from Defendant-Employer are admitted into evidence as Stipulated Exhibit #4. *Page 3 
10. Plaintiff's Expedited Motion to Compel Medical Treatment filed April 17, 2009, is admitted into evidence as Stipulated Exhibit #5.
11. Defendants' Response to Plaintiff's Motion to Compel Medical Treatment is admitted into evidence as Stipulated Exhibit #6.
12. An Order from the Commission filed April 24, 2009, is admitted into evidence as Stipulated Exhibit #7.
13. Plaintiff's Discovery Responses are admitted into evidence as Stipulated Exhibit #8.
14. Defendants' Motion to Compel Discovery Responses is admitted into evidence as Stipulated Exhibit #9.
15. Plaintiff's Response to Defendants' Motion to Compel Discovery Responses is admitted into evidence as Stipulated Exhibit #10.
16. The August 12, 2009 Order from the Commission is admitted into evidence as Stipulated Exhibit #11.
17. The parties participated in a mediated settlement conference on August 24, 2009. Defendants have paid the entire mediation fee. Pursuant to Rule 7(c) of the Rules for Mediated Settlement and Neutral Evaluation Conferences of the North Carolina Industrial Commission, Defendants are entitled to a credit for payment of Plaintiff's share of the mediation costs and Defendants may withhold funds from any award for this purpose.
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. Plaintiff is 53 years old. He lives in Wilson, North Carolina. Plaintiff began working for Defendant-Employer in 1978. Plaintiff was initially hired as an Apprentice and worked his way up to the positions of Journeyman, Machine Operator, Upkeep, and ultimately Process Control.
2. Prior to the injury that is the subject of this claim, Plaintiff suffered a back injury at work in 2004 when he slipped on some oil and fell backwards. Dr. Reeg treated him for this injury, and diagnosed him with a right-side L4-5 disk herniation. Dr. Reeg performed a decompressive laminotomy to treat the injury on August 30, 2004. Plaintiff recovered and was able to return to work by December 2004. Dr. Reeg gave Plaintiff a 7% permanent partial disability rating to his spine and released him from care in January 2005.
3. Subsequently, on June 19, 2006, Plaintiff sustained an admittedly compensable injury to his back during the course of his employment with Defendant-Employer. This 2006 injury is the subject of the present claim. Plaintiff was lifting a heavy grate, felt a sharp pop in his lower back, and developed pain in his lower back, left hip, and left thigh. The back pain was much more significant than the leg pain. Defendants accepted the injury as compensable by filing a Form 60 on June 29, 2006.
4. Plaintiff was initially treated by Dr. Kenneth Carter at Wilson Immediate Care, who prescribed medications and restricted him to light duty. After his symptoms did not improve, Plaintiff returned to Dr. Reeg again in September 2006. Dr. Reeg scheduled an MRI, initiated physical therapy, continued Plaintiff's medications, and maintained his work restrictions. *Page 5 
5. Plaintiff continued to work after his injury, performing sedentary duties. Although Plaintiff's position required heavy duty work, he relied on his co-workers to handle the physically demanding tasks for him.
6. On February 8, 2007, Plaintiff returned to Dr. Reeg following a myelogram CT scan. The scan did not show a recurrence of the disk herniation, but rather indicated that Plaintiff's low back pain was related to multilevel lumbar degenerative disk disease. Dr. Reeg did not believe that further surgery would help Plaintiff at this point. Noting that Plaintiff was "a very motivated individual that is trying to remain on the job," Dr. Reeg imposed work restrictions that he hoped would allow Plaintiff to continue working.
7. Plaintiff continued to work and his pain became progressively worse. Because of the pressure to perform his job, Plaintiff exceeded his work restrictions, which further worsened his condition.
8. Plaintiff returned to Dr. Reeg on July 17, 2007. Dr. Reeg noted that Plaintiff "would like to keep working if possible," but his ability to work with restrictions is "quite problematic." Dr. Reeg permanently restricted Plaintiff to sedentary duty work.
9. When Plaintiff informed Defendant-Employer of his permanent restrictions, he was told that there was no work for him. Since that time, Plaintiff has been receiving temporary total disability compensation.
10. Plaintiff underwent a functional capacity examination (FCE) on September 9, 2008. The FCE indicated that Plaintiff could only perform sedentary work. After the FCE, on October 16, 2008, Dr. Reeg found that Plaintiff had reached maximum medical improvement and confirmed his permanent sedentary work restrictions. *Page 6 
11. Before his 2006 injury, Plaintiff did not have any significant psychological problems and had never taken anti-depressant medications. After Defendant-Employer told Plaintiff that they did not have work for him, he had trouble coping, grew irritable with friends and family, experienced feelings of depression and anxiety, and had thoughts about suicide. In July 2007, Plaintiff spoke to Dr. Reeg about these difficulties. Noting possible anxiety and depression, Dr. Reeg recommended that Plaintiff's primary physician consider referring Plaintiff to a psychiatrist.
12. Plaintiff presented to Dr. Sidaros, his primary care physician, in January 2007. Dr. Sidaros practices general internal medicine, which includes practice in psychiatry. Plaintiff reported chronic back pain, as well as panic attacks and anxiety. Dr. Sidaros diagnosed anxiety disorder and noted that Plaintiff's panic attacks were caused in part by his stress at work. Dr. Sidaros prescribed Paxil.
13. Dr. Sidaros has continued to treat Plaintiff since January 2007. Dr. Sidaros continued to find Plaintiff depressed and anxious, due in large part to Plaintiff's back pain and inability to work. Dr. Sidaros generally prescribed Paxil or Xanax for these conditions, which has helped with Plaintiff's depression and anxiety. At one point, Dr. Sidaros recommended that Plaintiff see a psychologist.
14. At deposition, Dr. Sidaros testified that Plaintiff's back pain and inability to work, along with his weight problem, were the significant factors contributing to Plaintiff's mental health problems. He testified that Plaintiff's workplace injury to his back and his resulting disability significantly contributed to his depression and anxiety. In addition, Dr. Sidaros testified that the Paxil and Xanax he prescribed were reasonably necessary to provide relief for Plaintiff's depression and anxiety. *Page 7 
15. Dr. Smith is board-certified in psychiatry and neurology and has a mostly outpatient practice in Wilson. Dr. Smith first evaluated Plaintiff on October 19, 2007, on referral from Dr. Sidaros. Plaintiff presented with complaints of depression, anxiety, and chronic pain. Dr. Smith noted that Plaintiff derived a lot of self-worth and satisfaction from his work. Based on his presentation and history, Dr. Smith diagnosed Plaintiff with major depression. Dr. Smith believed that Plaintiff's depression was related to his back injury and resulting disability because Plaintiff's depressive thoughts were connected to the injury and because work was such an important part of Plaintiff's life. Dr. Smith prescribed Cymbalta to treat Plaintiff's depression, as well as his pain.
16. Dr. Smith has continued to treat Plaintiff since October 2007. Over time, Dr. Smith has adjusted Plaintiff's medications to treat his depression, anxiety, and chronic pain. For instance, in January 2008, Dr. Smith increased the amount of Cymbalta prescribed because of Plaintiff's unresolved depression and crying spells. In February 2009, Dr. Smith prescribed Atarax for Plaintiff to help relieve anxiety and itching. Dr. Smith also increased his dosage of Lyrica to better treat his chronic pain. Dr. Smith agreed that the Xanax prescribed by Dr. Sidaros helped to improve Plaintiff's condition and relieve his anxiety.
17. Dr. Smith testified at deposition that Plaintiff is still suffering from major depression, though it is in partial remission because of the medications that he is taking. Dr. Smith concluded that Plaintiff's workplace injury and resulting inability to work significantly contribute to his depression. Dr. Smith's treatment, as well as Dr. Sidaros' prescription of Xanax, has been reasonably necessary to effect a cure or provide relief for Plaintiff's depression. While Plaintiff's varying success controlling his weight has affected his anxiety, his work injury, *Page 8 
pain, and inability to work have remained significant factors contributing to his anxiety and depression.
18. The greater weight of the evidence establishes that Plaintiff's depression, anxiety, and chronic pain are related to his 2006 compensable injury by accident.
19. Sylvia Henry is a certified rehabilitation counselor, certified vocational evaluator, and licensed professional counselor. She is employed by Intracorp, primarily as a vocational case manager, and was hired by ESIS, the third-party administrator in this case, to provide vocational rehabilitation services to Plaintiff. Ms. Henry has had several meetings with Plaintiff, beginning in September 2009.
20. Plaintiff has a high school education and Ms. Henry's testing showed that he has good academic skills and abilities. Ms. Henry observed that Plaintiff is obese, walks with difficulty using a cane, and has difficulty with all physical activity. She noted that Plaintiff was very cooperative, very pleasant, had a good attitude, and tried hard on the tests. Ms. Henry found that Plaintiff was open to returning to work for a different employer. Plaintiff has also been very candid and honest with Ms. Henry.
21. Ms. Henry observed several barriers to Plaintiff returning to work: chronic pain, use of a cane, poor physical condition, lack of experience with work outside of Defendant-Employer, and lack of education beyond high school. Plaintiff also informed Ms. Henry that he has difficulty sitting for significant periods of time without experiencing severe pain.
22. Ms. Henry's initial vocational plan for Plaintiff was for him to receive training in another field, specifically accounting, that would allow him to return to work near his pre-injury salary level. Ms. Henry recommended this plan to Defendants, but it was not authorized. *Page 9 
23. Ms. Henry repeatedly stated in her reports that it will be very difficult for Plaintiff to find a job given his barriers to working and his sedentary duty restrictions. Ms. Henry testified at deposition that, in her opinion, if Plaintiff were to look for work on his own, he would not be able to find work or maintain it.
24. The greater weight of the evidence establishes that it is currently futile for Plaintiff to search for employment within his sedentary duty work restrictions given his age, specialized experience, and level of education. Therefore, at this time, Plaintiff is unable to earn wages due to his compensable injury.
25. The Full Commission finds that it would be beneficial for Plaintiff to engage in job retraining as recommended by Ms. Henry, provided that his treating physicians approve the retraining.
26. Defendants did not litigate this matter without reasonable ground.
 * * * * * * * * * * *
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident to his back on June 19, 2006. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury, Plaintiff is unable to work and is entitled to receive temporary total disability compensation at the compensation rate of $730.00 until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. The June 19, 2006 injury by accident significantly contributed to the development of plaintiff's depression, anxiety, and chronic pain. Plaintiff is entitled to have Defendants pay *Page 10 
compensation for ongoing treatment of those conditions. SeeSmith v. Champion, Int'l,134 N.C. App. 180, 517 S.E.2d 164 (1999); Hoyle v. CarolinaAssociated Mills, 122 N.C. App. 462, 470 S.E.2d 357 (1996).
4. Dr. Smith's treatment of Plaintiff, as well as Dr. Sidaros' prescription of Paxil and Xanax, was necessary to effect a cure, give relief, or lessen disability from a condition causally related to plaintiff's compensable injury. Therefore, Defendants shall pay for or reimburse the appropriate party for said treatment. N.C. Gen. Stat. § 97-25.
5. Additionally, Plaintiff is entitled to vocational training as recommended by Ms. Henry and approved by his treating physicians. N.C. Gen. Stat. § 97-25.
6. Plaintiff is not entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay Plaintiff temporary total disability compensation at the compensation rate of $730.00 per week until further order of the Commission.
2. Defendants shall pay past and future medical expenses for the effects of Plaintiff's injury, including the mental health treatment and medications provided by Dr. Sidaros and Dr. Smith, so long as it tends to provide relief, effect a cure, or lessen the period of disability.
3. Defendants shall provide Plaintiff with such appropriate vocational retraining as may be identified by vocational rehabilitation professional Sylvia Henry, as approved by Plaintiff's treating physicians. *Page 11 
4. A reasonable attorney fee in the amount of twenty-five percent (25%) of compensation due Plaintiff under the terms of this Opinion and Award is hereby approved for Plaintiff's counsel and shall be deducted from the amounts owed to Plaintiff and be paid directly to Plaintiff's counsel. Ongoing compensation shall be paid by sending every fourth check directly to Plaintiff's counsel.
5. Defendants shall bear the costs.
This the 15th day of November 2010.
 S/___________________
 LINDA CHEATHAM
 COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1